# STATE OF CONNECTICUT *v.* JAMES NIXON
## (AC 24960)

Schaller, Flynn and McLachlan, Js.

Argued September 23—officially released December 13, 2005

*Andrew S. Liskov*, special public defender, for the appellant (defendant).

*Troy F. Tatting*, certified legal intern, with whom were *Susann E. Gill*, senior assistant state's attorney, and, on the brief, *Mary M. Galvin*, state's attorney, and *Kevin S. Russo*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, James Nixon, appeals from the judgment of conviction, rendered after a jury trial, of two counts of assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[1] The defendant was sentenced to a term of two and one-half years imprisonment, followed by two and one-half years of special parole on each count, with the sentences to run consecutively to each other, for an effective sentence of five years to serve followed by five years of special parole. On appeal, the defendant claims that (1) the conviction and sentence on two counts of assault in the second degree, arising from one continuous assault against one victim, violated his rights guaranteed by the double jeopardy clause of the fifth amendment to the United States constitution, and (2) the court improperly charged the jury on consciousness of guilt infer-

---

[1] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

ences. We agree with the defendant that his rights under the double jeopardy clause were violated by his conviction of two counts of assault in the second degree, and we remand the case to the trial court with direction to combine the conviction of two counts of assault and to resentence the defendant on one count of assault in the second degree.[2]

The jury reasonably could have found the following facts. The victim, Cloyde Dixon, shared a home with several roommates, one of whom was the defendant. On the evening of September 24, 2002, the defendant and another roommate were arguing. The victim, seeing that the defendant was intoxicated, told the two roommates to finish their argument downstairs so that he could get some sleep. Sometime thereafter, the victim went into the kitchen to get a glass of water, and the defendant came upstairs from the basement. The defendant then attacked the victim, stabbing him twice, once in the leg and once behind his left shoulder. The two then struggled, and the victim was able to wrestle the knife from the defendant, who repeatedly told the victim that he was sorry. The defendant picked up the knife and proceeded to walk out of the back door. The entire altercation took only a couple of minutes.

Officer Tom Flaherty of the West Haven police department responded to the call of a fight at the residence of the defendant and the victim. While approaching the home, Flaherty noticed the defendant, in an intoxicated state, walking away from the scene. Flaherty handcuffed the defendant, detained him in the

---

[2] Here, the state charged the defendant with two counts of assault in the second degree on the basis of two stab wounds. The jury found the defendant guilty for twice stabbing the victim, and the court entered individual sentences for each count. Because the combining of the convictions into one count of assault in the second degree would now be based on the facts of the entire assault, the court must resentence the defendant taking the entire assault into consideration.

police car and went inside the residence, where he encountered the wounded victim. The victim identified the defendant as his attacker, and Flaherty placed the defendant under arrest.

The state, in a long form information, charged the defendant with two counts of assault in the second degree in violation of § 53a-60 (a) (2) for intentionally causing physical injury to the victim by means of a deadly weapon or dangerous instrument, two counts of assault in the second degree in violation of § 53a-60 (a) (3), for recklessly causing physical injury to the victim by means of a deadly weapon or dangerous instrument and two counts of reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a) for recklessly engaging in conduct, with extreme indifference to human life, that created a risk of serious physical injury to the victim. The state entered a nolle prosequi on all charges with the exception of the first two counts of assault in the second degree, for which the defendant was tried, convicted and ultimately sentenced. This appeal followed.

I

The defendant first claims that the state charged him in a multiplicitous information[3] and that the conviction and sentence on two counts of assault in the second degree, arising from one continuous assault perpetrated against one victim in a short period of time at the same location, violated his rights as guaranteed by the double jeopardy clause of the fifth amendment to the United States constitution and the constitution of Connecticut.[4] We agree.

---

[3] "Indictments charging a single offense in different counts are multiplicitous." Thirty-First Annual Review of Criminal Procedure, 90 Geo. L.J. 1087, 1359 (2002). In contrast, "[i]ndictments charging two or more distinct offenses in a single count are duplicitous." Id., 1355.

[4] The double jeopardy clause of the fifth amendment to the United States constitution is made applicable to the states through the due process clause of the fourteenth amendment; *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S.

The defendant concedes that his claim was not preserved at trial and seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] Such review is warranted. See *State* v. *Crudup*, 81 Conn. App. 248, 252, 838 A.2d 1053, cert. denied, 268 Conn. 913, 845 A.2d 415 (2004). "A defendant may obtain review of a double jeopardy claim, even if it is unpreserved, if he has received two punishments for two crimes, which he claims were one crime, arising from the same transaction and prosecuted at one trial . . . . Because the claim presents an issue of law, our review is plenary." (Citations omitted.) Id.

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction." (Internal quotation marks omitted.) *State* v. *D'Antonio*, 274 Conn. 658, 714–15, 877 A.2d 696 (2005). Here, counts one and two of the amended long form information, the counts on which the defendant was convicted, both charged that "at the Town or City of West Haven, on or about the 24th day of September, 2002, in the area of 126 Taft Avenue, the [defendant], with intent to cause physical injury to another person, caused such injury to another

---

Ct. 2056, 23 L. Ed. 2d 707 (1969); and the prohibition against double jeopardy that is implied in the due process and personal liberty guarantees of article first, §§ 8 and 9, of the constitution of Connecticut. See *State* v. *Kasprzyk*, 255 Conn. 186, 192, 763 A.2d 655 (2001). "[O]ur state constitution [however] does not provide greater protection [against double jeopardy] than the federal constitution . . . ." *State* v. *Benjamin*, 86 Conn. App. 344, 348 n.5, 861 A.2d 524 (2004). Our analysis is limited, therefore, to that of the federal constitution.

[5] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding*, supra, 213 Conn. 239–40.

person, specifically Cloyde Dixon, by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm, in violation of Connecticut General Statutes section 53a-60 (a) (2)." Although we believe that the information alone is sufficient to meet the first prong, i.e., same victim, same time period, same instrument, we also note that the evidence produced at trial demonstrated that the defendant twice stabbed the same victim, at the same place and during the same time period, with the same instrument, with the same common intent to inflict physical injury during one continuous, uninterrupted assault. Thus, the first prong of the double jeopardy analysis is met. See *State* v. *Devino*, 195 Conn. 70, 74, 485 A.2d 1302 (1985); *State* v. *Flynn*, 14 Conn. App. 10, 17, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988).

"Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . It is well settled that [t]he proper double jeopardy inquiry when a defendant is convicted of multiple violations of the same statutory provision is whether the legislature intended to punish the individual acts separately or to punish only the course of action which they constitute. . . . As [was] noted in *State* v. *Madera*, 198 Conn. 92, 109, 503 A.2d 136 (1985), the issue, though essentially constitutional, becomes one of statutory construction. [Our Supreme Court] recently interpreted a number of criminal statutes to determine the same issue: whether the legislature intended to allow punishment for two separate violations of the same statutory provision. . . . In these cases, [the Supreme Court] found that the pivotal question was whether the statutes defined crimes against the individual persons." (Citation omitted; internal quotation marks omitted.) *State* v. *D'Antonio*, supra, 274 Conn. 715–16.

The state argues that the defendant's conviction and sentence on both counts of assault were proper because the jury reasonably could have found that the defendant twice intentionally stabbed the victim and that "each stabbing by the defendant constituted a separate, complete and chargeable offense under . . . § 53a-60 (a) (2) . . . ." To support this contention, the state offers several cases concerning sexual assault. Although we agree that in the context of sexual assault, the legislature has expressed a clear intention that each act of penetration be charged as a separate offense; see *State v. Scott*, 270 Conn. 92, 99–100, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005);[6] we do not agree that such an intent has been demonstrated in the context of an assault in the second degree, where a single victim is stabbed twice during one continuous, uninterrupted assault occurring in a matter of a few minutes. As we explained in *State v. Cassidy*, 3 Conn. App. 374, 388, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985), in the context of a sexual assault, "each assault upon [a] victim involve[s] a separate act of will on the part of the defendant and a separate indignity upon the victim. . . . [T]he legislative intention was that each [sexual] assault should be deemed an additional offense. . . . To interpret the statute otherwise would be to strip it of all its sense." (Citation omitted; internal quotation marks omitted.) Id. Such is not the case here.

The state also offers as support for its argument the case of *State v. Tweedy*, 219 Conn. 489, 594 A.2d 906 (1991), in which the defendant was convicted, inter alia, of robbing a single victim twice within a thirty minute

---

[6] "Our case law has long established that each act of criminal sexual conduct, as defined by our criminal statutes, is separately punishable under those statutes and, therefore, in such cases there is no double jeopardy violation because they do not arise out of the same act or transaction." *State v. Scott*, supra, 270 Conn. 99.

time period. In *Tweedy*, the defendant forced his way into the victim's apartment, robbed her once, sexually assaulted her and then made her walk with him to a bank to withdraw money from her account using an automatic teller machine, thereby robbing her a second time. Under the facts of *Tweedy*, the robberies were separated by a sexual assault, requiring a different mens rea, and they occurred in two different locations. Here, the defendant and the victim were in an altercation, which, by the victim's own testimony, occurred over the course of a few minutes, in the same location, between the same two people, resulting in the victim's twice being stabbed by the defendant.

The state, during oral argument, also argued that this case is analogous to *State* v. *Garvin*, 242 Conn. 296, 699 A.2d 921 (1997), in which the defendant was charged and convicted of two counts of failure to appear in the first degree for not appearing in court on only one occasion, but in violation of two separate bail bonds. In *Garvin*, our Supreme Court explained: "A bail bond is a contract between the government and the defendant and his surety. . . . Each bail bond or promise to appear constitutes a contract that can be forfeited, not only upon the defendant's failure to appear, but also upon breach of other conditions in the agreement. . . . In this case, the language of the bail bonds evidences, for each bond, a contract in which the defendant promised to appear wherever his appearance might be relevant to the charges against him, and not only at any one designated time and place. Specifically, the defendant promised to appear at any other place and time to which the charge(s) against me may be continued and in any other court to which the charge(s) against me may be transferred. The defendant executed two such bonds, one for each file, and although both bonds recited the same form language, each constituted an independent

promise to appear." (Citations omitted; internal quotation marks omitted.) Id., 305–306.

The state contends that just as the legislature intended to punish a defendant for failing to appear on each bond, it also intended that each act of causing a physical injury during an assault be punishable as a separate assault: "Each isolated act of causing physical injury to another person is a separate and distinct crime that can be committed uno actu." The state argues that is true even where the confrontation is continuous, uninterrupted and close in time.

To clarify the state's contention, it was asked of counsel during oral argument whether, "if you and I were in a fistfight, and I hit you a hundred times with my fist . . . would I be guilty of a hundred assaults?" To which counsel for the state responded: "Yes, according to the statutes . . . ." Counsel for the state then explained: "Under § 53a-60 (a) (2), it says a person is guilty of assault in the second degree when . . . with intent to cause physical [injury] to another person, he causes such injury to the person by means of deadly weapon. That injury happened to the victim twice here. And if we look at the actual language of the statute, it uses the singular word, injury. It might be different if the statutes said: causes injuries to the person." We simply cannot agree with this argument, and we note that although the statute does not say "with intent to cause injuries," it also does not say "with intent to cause *an* injury." Black's Law Dictionary (7th Ed. 1999) defines physical injury as being synonymous with bodily injury, which is defined as "[p]hysical damage to a person's body." Our statutes also define physical injury as "impairment of physical condition or pain . . . ." General Statutes § 53a-3 (3). To say, for example, that our legislature intended that a defendant charged with simple assault, where ten blows were thrown, could be tried and found not guilty at one trial relating only to

the first punch thrown and then, following the state's argument, subsequently charged and brought to trial nine more times, all on the basis of one fight with one victim in one place in one very short period of time, simply does not comport with our reading of the statute, nor does it comport with the history of the prosecution of similar offenses in our case law.[7] See, e.g., *State* v. *Ramos*, 271 Conn. 785, 789, 860 A.2d 249 (2004) (defendant convicted, inter alia, of one count of assault in second degree after striking victim twice on forehead with twenty ounce hammer); *State* v. *Ghere*, 201 Conn. 289, 292, 513 A.2d 1226 (1986) (defendant convicted, inter alia, of one count of assault in second degree where victim struck in face with blackjack, punched couple of times in stomach and struck again in head); *State* v. *Daniels*, 83 Conn. App. 210, 212–13, 848 A.2d 1235 (defendant convicted, inter alia, of one count of assault in second degree after striking victim multiple

---

[7] "It is axiomatic that the law favors rational and sensible statutory construction, and that the courts interpret statutes to avoid bizarre or nonsensical results. . . . [W]e will not undertake an examination of [a statutory provision] with blinders on regarding what the legislature intended [it] to mean. . . . In interpreting a statute, common sense must be used . . . . The law favors rational and sensible statutory construction. . . . The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable. . . . When two constructions are possible, courts will adopt the one which makes the [statute] effective and workable, and not one which leads to difficult and possibly bizarre results. . . . We have long followed the guideline that [t]he intent of the lawmakers is the soul of the statute, and the search for this intent we have held to be the guiding star of the court. It must prevail over the literal sense and the precise letter of the language of the statute. . . . When one construction leads to public mischief which another construction will avoid, the latter is to be favored unless the terms of the statute absolutely forbid [it]. . . . Thus, we will not limit our review solely to the words used in [the statute], but instead use common sense, as well as the legislative history, policy and its relationship to existing legislation and common-law principles pertaining to the same general subject matter." (Citations omitted; internal quotation marks omitted.) *Whitaker* v. *Commissioner of Correction*, 90 Conn. App. 460, 490–91, 878 A.2d 321, cert. denied, 276 Conn. 918, 888 A.2d 89 (2005).

times with butt of gun), cert. denied, 270 Conn. 913, 853 A.2d 528 (2004); *State* v. *Bloomfield*, 74 Conn. App. 674, 675–76, 813 A.2d 1052 (defendant convicted of one count of assault in first degree after stabbing victim several times), cert. denied, 263 Conn. 905, 819 A.2d 839 (2003); *State* v. *Jordan*, 64 Conn. App. 143, 147, 781 A.2d 310 (2001) (defendant convicted, inter alia, of one count of assault in third degree after striking victim in face, grabbing her by shirt, pinning her shoulders to bed, wrapping her up like a rubber band and pulling her hair); *State* v. *Vuley*, 15 Conn. App. 586, 587, 545 A.2d 1157 (1988) (defendant convicted, inter alia, of one count of assault in second degree after striking victim several times on head with pipe); *State* v. *Rucker*, 8 Conn. App. 176, 176–77, 511 A.2d 1027 (1986) (defendant charged with and convicted of one count of assault in first degree after striking victim at least three times with hammer). Further, we cannot find, nor does the state direct us to, any case in which a defendant was charged with multiple assaults, of a nonsexual nature, on facts similar to those in this case, whether involving fists, knives or other dangerous instruments.

An exhaustive review of the case law of other states reveals only one case that is on point. In *State* v. *Pelayo*, 881 S.W.2d 7 (Tenn. Crim. App. 1994), the defendant was charged with, and convicted of, two counts of aggravated assault for cutting the victim first on the arm, and again a few moments later as she tried to escape, on the leg. On appeal, the Tennessee Court of Criminal Appeals reversed a conviction in part and set aside the conviction of one of the counts, holding that "[w]hile the assaults were separated by time and place . . . they coalesced into an 'unmistakable single act,' though separated by a few seconds and feet." Id., 13. The court based its decision on the language of the Tennessee statute, which focused on the act of causing injury, fear or physical contact and did not indicate that

the legislature intended for a defendant to be punished separately "for each blow or injury." Id. The aggravated assault statute at issue in *Pelayo* "deem[ed] a person guilty of aggravated assault who '[c]ommits an assault as defined in [Tenn. Code Ann.] § 39-13-101 [1991], and (A) [c]auses serious bodily injury to another; or (B) [u]ses or displays a deadly weapon. . . .' Tenn. Code Ann. § 39-13-102 (a) [1991] . . . . An assault occurs when conduct causes bodily injury, fear, or offensive or provocative physical contact to another person. Tenn. Code Ann. § 39-13-101 (a) [1991]." *State* v. *Pelayo*, supra, 9. Similar to the statute in *Pelayo*, § 53a-60 (a) (2) provides that a defendant is guilty of the assault in the second degree when "he causes such injury . . . ." General Statutes § 53a-60 (a) (2).

"In order to prove assault in the second degree, the state must show that the defendant intended to cause physical injury . . . [which] requires the intent to bring about a physical result, i.e., injury . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Stavrakis*, 88 Conn. App. 371, 389, 869 A.2d 686, cert. denied, 273 Conn. 939, 875 A.2d 45 (2005). Although the state, here, argues that the legislature's use of the word "injury," in the singular, indicates a desire to punish each injury as a separate offense, we, like the court in *Pelayo*, do not agree. Accordingly, we conclude that the defendant's rights under the double jeopardy clause were violated by his conviction of two counts of assault in the second degree resulting from conduct against one victim that was nonsexual, continuous, uninterrupted and close in time.

## II

The defendant next claims that the court improperly charged the jury that it could infer a consciousness of guilt because he left the scene. The defendant argues that because he explained that he left the scene to await the arrival of the police, such an instruction was

improper. The state argues that the court's instruction on consciousness of guilt was proper because the evidence adduced at trial supported such an instruction. We agree with the state.

"Our standard of review on this claim is whether it is reasonably probable that the jury was misled. . . . The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Therefore, jury instructions need not be exhaustive, perfect, or technically accurate. Nonetheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.) *State* v. *Hernandez*, 91 Conn. App. 169, 176–77, 883 A.2d 1, cert. denied, 276 Conn. 912, 886 A.2d 426 (2005).

The relevant portion of the jury charge was as follows: "The conduct of a person in leaving the scene of a crime, if proven that he was in fact at the scene of a crime, may be considered in determining his guilt, since, *if unexplained,* it tends to prove a consciousness of guilt, or of a flight. [And] if shown, is not conclusive, nor does it raise a legal presumption of guilt, but it's to be given the weight to which the jury thinks it is entitled under the circumstances shown." (Emphasis added.) The defendant argues that because he did offer a reasonable explanation for leaving the scene, this instruction was improper because it was not unexplained.

When noting the defendant's exception to this portion of the charge, the court explained: "I think in this matter there was clear testimony that the defendant did leave the building where these alleged incidents took place.

Further, there was some conflicting testimony with respect to whether the defendant was heading toward a point where he was waving the police officers down, or walking away from that point when the police officers arrived. I think, based on that, there is, again, adequate evidence for the court to insert this particular charge here." We agree.

Although the defendant explained that he left the scene to await the arrival of the police, Officer Flaherty testified that when he saw the defendant, the defendant was walking along the street, away from the scene, and was wearing boxer shorts. Flaherty, then, stopped the defendant and handcuffed him.

"Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . [W]hen a defendant has left the [scene] following a crime, the question is: *why* did he do so? This requires an assessment by the fact finder of the defendant's motivations or reasons for leaving the [scene]. If there is a reasonable view of the evidence that would support an inference that he did so because he was guilty of the crime and wanted to evade apprehension—even for a short period of time—then the trial court is within its discretion in giving such an instruction because the fact finder would be warranted in drawing that inference." (Citations omitted; emphasis in original.) *State* v. *Scott*, supra, 270 Conn. 105–106.

Here, as the court explained in noting the defendant's exception to the charge on consciousness of guilt, there was testimony, in contrast to the defendant's explanation that he had left the scene to await the arrival of the police, that would support an inference that the

defendant was walking away from the scene and did not signal the police upon their arrival at the area. It was the function of the jury to assess the credibility of the witnesses and to credit or to discredit the defendant's explanation. Here, the court's instruction to the jury that the defendant's flight *"if unexplained* . . . is not conclusive, nor does it raise a legal presumption of guilt, but it's to be given the weight to which the jury thinks it is entitled under the circumstances shown"; (emphasis added); was proper under the circumstances, the jury being free to accept or to reject the defendant's explanation.

The judgment is reversed in part and the case is remanded with direction to combine the conviction of two counts of assault in the second degree and to resentence the defendant on one count of assault in the second degree.

In this opinion the other judges concurred.