******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* JOESENIER RUIZ-PACHECO
## (SC 20206)

Palmer, McDonald, D'Auria, Kahn and Ecker, Js.*

*Syllabus*

Convicted of two counts each of the crimes of assault in the first degree as a principal and assault in the first degree as an accessory, among other crimes, in connection with the stabbings of the victims, T and R, the defendant appealed to the Appellate Court, claiming that his convictions of assault in the first degree as both a principal and an accessory as to T and R violated the prohibition against double jeopardy under the United States constitution. During a fight in a parking lot involving the defendant, the defendant's brother, E, and T and R, the defendant and E each stabbed T at least once, and R was stabbed two or three times, at least once by the defendant. Upon realizing that he had been stabbed, T departed for the hospital, and the defendant and E walked away from the area where the fight occurred to another area of the parking lot. After a brief break, R approached the defendant and E, made a comment, and turned away, and the defendant and E then ran after R. E stabbed R in the back, causing him to fall and tumble to a grassy area adjacent to the parking lot. The defendant then approached R and stabbed him in the chest, stating, "that's for hitting [E]." On appeal, the Appellate Court concluded that the defendant's double jeopardy claim failed because his multiple punishments for assault as to each victim were premised on distinct repetitions of the same crime rather than on a single criminal act. On the granting of certification, the defendant appealed to this court, claiming that his principal and accessory convictions stemmed from one continuous course of conduct as to each victim and, therefore, that each set of assault convictions as to T and R violated the double jeopardy clause's prohibition against the imposition of multiple punishments for the same offense. *Held*:

1. This court determined that, because Connecticut law treats the commission of a substantive crime as a principal and the commission of that same substantive crime as an accessory as alternative means of committing the same substantive crime, they arise under the same substantive criminal statute for purposes of the double jeopardy inquiry, and the proper inquiry when a defendant is convicted of multiple violations of the same substantive criminal statute is whether the legislature intended to punish the individual acts separately or to punish the course of action that they constitute; moreover, because neither the language nor the legislative history of the substantive criminal statute (§ 53a-59 (a) (1)) under which the defendant was convicted indicated whether the legislature intended to punish individual assaultive acts separately or to punish only the course of action that those acts constitute, this court resolved that ambiguity by applying the rule of lenity to avoid turning a single transaction into multiple offenses and, accordingly, interpreted § 53a-59 (a) (1) as embracing a course of conduct offense; furthermore, in determining whether the defendant engaged in distinct courses of conduct and, thus, separately punishable assaults as to T and R, this court considered the amount of time separating the assaultive acts, whether the acts occurred at different locations, the defendant's intent or motivation behind the acts, and whether any intervening events occurred between the acts, such that the defendant had the opportunity to reconsider his actions.

2. The Appellate Court incorrectly concluded that the defendant's conviction of and punishment for assault in the first degree as a principal and assault in the first degree as an accessory as to T did not violate the double jeopardy clause, as the defendant's assaultive acts against T were part of the same continuing course of conduct, and, accordingly, this court reversed the judgment of the Appellate Court insofar as it upheld the defendant's conviction of assault in the first degree as an accessory as to T: there was a single, uninterrupted fight in which the defendant and E both stabbed T in a discrete area of the parking lot,

all of T's stab wounds were inflicted within seconds of each other, and there was no evidence of a break in the fight with T or any other intervening event separating one stabbing of T from another that would have afforded the defendant an opportunity to reconsider his actions and to formulate the intent to commit an additional assault; moreover, the actus rei underlying both of the defendant's assault convictions as to T were the same because the conduct that, according to the state, intentionally aided E in the commission of the assault, namely, the defendant's participation in the fight with a knife, either by stabbing T and R or through his armed presence, was the very same conduct that constituted the defendant's commission of the crime of assault as a principal.

3. The Appellate Court properly upheld the defendant's conviction of assault in the first degree as a principal and assault in the first degree as an accessory as to R, as the defendant's stabbings of R constituted two distinct courses of assaultive conduct: after the defendant inflicted at least one initial stab wound on R, the defendant and E walked away from R and to a different area of the parking lot, no blows were exchanged during the interlude, and this break afforded the defendant an opportunity to reconsider his actions and to formulate a distinct criminal intent; moreover, when the fight resumed after R approached the defendant and E, the defendant's final stabbing of R in the grassy area next to the parking lot was distinct both geographically and temporally from the first series of stabbings that occurred before the break in the fight, and the defendant's declaration that the final stabbing of R was "for hitting [E]" suggested the defendant's formulation of a new criminal intent that was separate and distinct from the intent behind the defendant's initial stabbing of R; furthermore, the defendant's conviction as a principal did not categorically preclude his conviction as an accessory for the same substantive crime, as multiple convictions of the same offense are permissible under the double jeopardy clause, as long as each conviction is based on distinct acts or transactions that constitute separately completed units of prosecution under the statute in question, and, in the present case, the defendant's stabbings of R constituted two distinct courses of conduct under § 53a-59 (a) (1).

Argued November 20, 2019—officially released July 9, 2020**

*Procedural History*

Substitute information charging the defendant with four counts of the crime of assault in the first degree and two counts each of the crimes of attempt to commit murder and conspiracy to commit assault in the first degree, brought to the Superior Court in the judicial district of Danbury and tried to the jury before *Eschuk, J.*; verdict of guilty of four counts of assault in the first degree, two counts of conspiracy to commit assault in the first degree, and one count of attempt to commit murder; thereafter, the court vacated the verdict as to one count of conspiracy to commit assault in the first degree and rendered judgment thereon, from which the defendant appealed to the Appellate Court, *Prescott, Elgo* and *Harper, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Reversed in part*; *judgment directed.*

*Pamela S. Nagy*, assistant public defender, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, *Warren C. Murray*, former supervisory assistant state's attorney, and *Jennifer F. Miller*, assistant state's attorney, for the appellee (state).

*Opinion*

ECKER, J. The defendant, Joesenier Ruiz-Pacheco, was convicted of, inter alia, two counts of assault in the first degree as a principal in violation of General Statutes § 53a-59 (a) (1)[1] and two counts of assault in the first degree as an accessory in violation of General Statutes §§ 53a-8 (a)[2] and 53a-59 (a) (1) on the basis of a joint physical assault involving two perpetrators, the defendant and his brother, and two victims, Kenneth Tucker and Luis Rodriguez. On appeal, the defendant claims that the Appellate Court improperly affirmed the judgment of conviction because he committed only one assault per victim (for a total of two assaults), and, therefore, his conviction of four assaults violates his right to be free from double jeopardy under the United States constitution. We agree with the defendant's claim as to Tucker, but we disagree with the defendant's claim as to Rodriguez and, therefore, affirm in part and reverse in part the judgment of the Appellate Court.

The jury reasonably could have found the following facts relevant to the defendant's appeal. Shortly after 2 a.m. on December 1, 2012, a fight occurred in the parking lot of the C-Town Supermarket, which is adjacent to the El Milenio nightclub in Danbury. The defendant and his brother, Eliezer Ruiz-Pacheco, had been at El Milenio with two friends that night. Also patronizing the nightclub that night was a group of four women, including the defendant's ex-girlfriend, Samantha Medina. When the club closed at 2 a.m., both groups made their way to the C-Town parking lot, where their cars were parked. A number of other nightclub patrons had also parked in the C-Town lot and were present during the ensuing events. Tucker was waiting in the parking lot to meet the women in Medina's group. Another young man, Rodriguez, also was present, although he was not associated with either group or with Tucker.

As the two groups arrived in the C-town parking lot, an argument broke out between Eliezer and one of the women in Medina's group. Medina approached the defendant, and the defendant pushed or punched her. Medina struck back, and the defendant put her in a headlock. At this point, both Tucker and Rodriguez attempted to intervene. Tucker saw the defendant holding Medina in a headlock, and he approached the defendant, punched him, and told him to let her go. At approximately the same time, Rodriguez saw the defendant strike Medina. Rodriguez "bum-rushed" the defendant and attempted to hit him. There was conflicting testimony as to whether Tucker or Rodriguez reached the defendant first. In any event, a brief melee ensued in which Tucker was stabbed multiple times, at least once by each of the two assailants.

Eliezer immediately became involved in the melee in

support of his brother. At some point, the defendant and Eliezer produced knives. Multiple stab wounds were inflicted on Tucker, at least one by the defendant. Tucker, upon realizing that he had been stabbed, backed away from the fight and left for the hospital. Rodriguez also received two or three stab wounds soon after the fight began, at least one of which was inflicted by the defendant. At about the same time that Tucker left the fight, and after Rodriguez had sustained his initial wounds, the defendant and Eliezer walked away from the area of the parking lot where the fight had occurred and toward a nearby light pole. There was a brief break in the action at this point.

The altercation did not end there, however, because Rodriguez followed the defendant and his brother in order to "attack [the defendant]" because "we were still fighting . . . ." As Rodriguez approached the defendant and Eliezer, Rodriguez "said something to them." The defendant and Eliezer then ran after Rodriguez, who had turned away after speaking his mind. Eliezer stabbed Rodriguez in the back, causing him to fall to the ground and tumble to a grassy area adjacent to the parking lot. While Rodriguez was lying on his back unable to move, the defendant stabbed him in the chest, saying, "that's for hitting my brother." The defendant and Eliezer fled the scene in a vehicle. The entire fight, from the point when Tucker and Rodriguez first confronted the defendant and his brother to the time when the defendant stabbed Rodriguez in the chest, lasted approximately seventy seconds.

In an eight count, long form information, the state charged the defendant with four counts relating to each victim: criminal attempt to commit murder, in violation of General Statutes §§ 53a-49 and 53a-54a (a); assault in the first degree as a principal, in violation of § 53a-59 (a) (1); assault in the first degree as an accessory, in violation of §§ 53a-8 and 53a-59 (a) (1); and conspiracy to commit assault in the first degree, in violation of General Statutes §§ 53a-48 and 53a-59 (a) (1). After a jury trial, the defendant was convicted on all counts except attempt to commit murder against Tucker. At sentencing, the trial court vacated the defendant's conviction of conspiracy to commit assault against Tucker. The court then sentenced the defendant to a total effective term of twenty-two years of incarceration and five years of special parole.[3]

The defendant appealed from the judgment of the trial court to the Appellate Court, claiming, among other things, that his multiple assault convictions as to each victim violated his right to be free from double jeopardy. *State* v. *Ruiz-Pacheco*, 185 Conn. App. 1, 5, 196 A.3d 805 (2018). The Appellate Court reviewed the defendant's unpreserved constitutional claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[4] and determined that the defendant could not prevail on his

claim because he had failed to establish the existence of a double jeopardy violation. *State* v. *Ruiz-Pacheco*, supra, 21. Specifically, the Appellate Court held that "the defendant's multiple punishments for assault as to each victim were premised not on a single criminal act but distinct repetitions of the same crime . . . ." Id. The Appellate Court therefore upheld the defendant's assault convictions. Id., 53. We granted the defendant's petition for certification to appeal to determine whether "the Appellate Court [correctly] conclude[d] that the defendant's convictions of assault in the first degree as both a principal and as an accessory, for a joint assault on the same victim, do not violate the double jeopardy clause of the United States constitution . . . ." *State* v. *Ruiz-Pacheco*, 330 Conn. 938, 938, 195 A.3d 385 (2018).

On appeal, the defendant argues that the principal and accessory charges stemmed from one continuous course of conduct as to each victim, and, therefore, his two assault convictions for each victim violate the double jeopardy clause's prohibition against the imposition of multiple punishments for the same offense. The state argues in response that the defendant's convictions arose from the repetition of separate and distinct acts, and, therefore, his assaultive conduct as both a principal and an accessory with respect to each victim is separately punishable. Specifically, the state claims that the defendant committed an assault on each victim as a principal by stabbing each victim and an assault on each victim as an accessory by assisting his brother in stabbing each victim.

I

The defendant's double jeopardy claim presents a question of law, over which we exercise plenary review. See, e.g., *State* v. *Brown*, 299 Conn. 640, 650, 11 A.3d 663 (2011). "The fifth amendment to the United States constitution provides in relevant part: No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment."[5] (Internal quotation marks omitted.) Id., 650–51; see also *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969) (double jeopardy clause is applicable to states through fourteenth amendment to United States constitution).

The defendant contends that he has been subjected to multiple punishments for the same offense in violation of the double jeopardy clause. "Double jeopardy prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 299 Conn. 651. We have articulated two different approaches to the double jeopardy analysis of multiple punishments. Which approach applies in any given case depends on the statutory basis of the underlying

charges. When the defendant is charged with the violation of two distinct statutes in a single criminal proceeding arising from a single underlying set of events, we have employed a two part analysis. "First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) Id., 652. We "[t]raditionally . . . have applied the *Blockburger*[6] test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (Footnote altered; internal quotation marks omitted.) *State* v. *Porter*, 328 Conn. 648, 655, 182 A.3d 625 (2018).

In contrast, "[t]he proper double jeopardy inquiry when a defendant is convicted of multiple violations of the *same* statutory provision is whether the legislature intended to punish the individual acts separately or to punish only the course of action which they constitute." (Emphasis added; internal quotation marks omitted.) *State* v. *Miranda*, 260 Conn. 93, 120, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002). This analysis essentially asks what "unit of prosecution" the legislature intended as the punishable act under the statute. See *State* v. *Garvin*, 242 Conn. 296, 306–308, 699 A.2d 921 (1997) (determining what legislature intended unit of prosecution to be for charge of failure to appear); *State* v. *Tweedy*, 219 Conn. 489, 497–99, 594 A.2d 906 (1991) (unit of prosecution for first degree robbery); *State* v. *Hearl*, 182 Conn. App. 237, 272–73, 190 A.3d 42 (unit of prosecution for animal cruelty statute), cert. denied, 330 Conn. 903, 192 A.3d 425 (2018). The unit of prosecution analysis involves an effort to determine the legislature's intent as to whether and how a course of prohibited conduct can be "separat[ed] into parts, each of which in itself constitutes a completed offense." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 299 Conn. 652. In some instances, the legislature will intend to punish a continuous course of conduct as a single unit of prosecution. See, e.g., *State* v. *Benson*, 153 Conn. 209, 218, 214 A.2d 903 (1965) (larceny is continuing crime); *State* v. *Licari*, 132 Conn. 220, 226, 43 A.2d 450 (1945) (operating automobile under influence of liquor is continuing crime); see also, e.g., *In re Snow*, 120 U.S. 274, 281, 7 S. Ct. 556, 30 L. Ed. 658 (1887) (offense of "cohabiting with more than one woman" is, "in the sense of the . . . statute . . . inherently . . . a continuous [offense], having duration . . . and not an [offense] consisting of an isolated act"). In other instances, the legislature intends to punish separately each discrete act that con-

stitutes a completed offense. See, e.g., *State* v. *Frazier*, 185 Conn. 211, 229, 440 A.2d 916 (1981) (legislature intended to punish "each separate act of forcible sexual intercourse"), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982);[7] *State* v. *Miranda*, 142 Conn. App. 657, 663–65, 64 A.3d 1268 (2013) (legislature intended to punish separately each distinct act of strangulation in second degree), appeal dismissed, 315 Conn. 540, 109 A.3d 452 (2015).

Selecting between these two approaches is simple enough in the ordinary case because it will be clear whether the defendant stands charged with violating two different criminal statutes or two violations of the same criminal statute. The analysis in the present case is complicated by the fact that, with respect to both victims, the defendant was convicted of assault as a principal offender under § 53a-59 (a) (1) *and* as an accessory under §§ 53a-8 and 53a-59 (a) (1). We therefore must determine as a threshold matter whether a conviction of a crime as a principal offender is a conviction under the same statute, or a different statute, as a conviction of that same crime as an accessory. We conclude that, because Connecticut law treats the two violations as alternative means of committing the same crime, they arise under the same substantive criminal statute for double jeopardy purposes.

Section 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." This statute deems the accessory to be the same as the principal for purposes of criminal liability and punishment. Thus, although a separate and distinct provision in our criminal statutes defines a category of conduct commonly known as accessory liability, "[t]here is no such crime as *being an accessory* . . . . The accessory statute merely provides alternate means by which a substantive crime may be committed." (Emphasis in original; internal quotation marks omitted.) *State* v. *Montanez*, 277 Conn. 735, 755–56, 894 A.2d 928 (2006); see also *State* v. *Foster*, 202 Conn. 520, 527, 522 A.2d 277 (1987) ("both attempt and conspiracy are offenses in and of themselves, while accessorial liability is not"). In this way, Connecticut follows the "modern approach" to accessory liability, which "is to abandon completely the old [common-law] terminology and simply provide that a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime." (Internal quotation marks omitted.) *State* v. *Harris*, 198 Conn. 158, 164, 502 A.2d 880 (1985). Thus, "there is no practical significance in being labeled an 'accessory' or a 'principal' for the purpose of determining criminal responsibility." Id.

Our prior double jeopardy cases involving accessory crimes illustrate the point. In conducting a double jeopardy analysis when the defendant has been charged as an accessory, we typically look to the elements of the principal offense underlying the accessory charge, not to the elements of accessory liability. See, e.g., *State* v. *James*, 247 Conn. 662, 671–74, 725 A.2d 316 (1999) (applying precedential double jeopardy analysis for crime of felony murder as principal to determine whether defendant may be retried for felony murder as accessory after being convicted of robbery); *State* v. *Nixon*, 231 Conn. 545, 551–55, 651 A.2d 1264 (1995) (looking to elements underlying principal offense to determine whether convictions as accessory violated double jeopardy); *Harris* v. *Commissioner of Correction*, 107 Conn. App. 833, 841–42, 947 A.2d 7 (applying *Blockburger* test to principal crime of robbery when defendant challenged his convictions of robbery in first degree as accessory and conspiracy to commit robbery in first degree), cert. denied, 288 Conn. 908, 953 A.2d 652 (2008); *State* v. *Fudge*, 20 Conn. App. 665, 669, 569 A.2d 1145 (same), cert. denied, 214 Conn. 807, 573 A.2d 321 (1990).[8] Conducting the double jeopardy analysis on the basis of the principal crime underlying an accessory conviction is in accordance with the axiom that "[t]here is no such crime as *being an accessory* . . . ."[9] (Emphasis in original; internal quotation marks omitted.) *State* v. *Montanez*, supra, 277 Conn. 755. Because a conviction as an accessory is the same as a conviction as a principal offender, we conclude that the defendant in the present case was convicted and punished for "multiple violations of the same statutory provision"; (internal quotation marks omitted) *State* v. *Miranda*, supra, 260 Conn. 120; namely, assault in the first degree in violation of § 53a-59 (a) (1).

To determine whether the defendant's multiple assault convictions violate the double jeopardy clause, we must ascertain the unit of prosecution that the legislature intended to punish under § 53a-59 (a) (1). See id. (proper inquiry when defendant is convicted of multiple violations of same statutory provision is whether legislature intended to punish individual acts separately or to punish course of conduct that they constitute). "This is because [t]he role of the constitutional guarantee [against double jeopardy] is limited to [en]suring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense. . . . The issue, though essentially constitutional, becomes one of statutory construction." (Internal quotation marks omitted.) *State* v. *Bernacki*, 307 Conn. 1, 10, 52 A.3d 605 (2012), cert. denied, 569 U.S. 918, 133 S. Ct. 1804, 185 L. Ed. 2d 811 (2013).

The question of what unit of prosecution the legislature intended to punish under § 53a-59 (a) (1) presents an issue of statutory construction, over which we exer-

cise plenary review. See *State* v. *Garvin*, supra, 242 Conn. 304–305 (exercising plenary review over question of statutory interpretation when defendant was convicted of multiple violations of same statute); *State* v. *Hearl*, supra, 182 Conn. App. 272 (question of correct unit of prosecution under statute is "a question of law subject to plenary review"). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, 329 Conn. 684, 694, 189 A.3d 79 (2018).

Section 53a-59 (a) (1) provides: "A person is guilty of assault in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ." The defendant does not dispute that a separate assault occurs with respect to each victim who suffers a serious physical injury inflicted with the requisite intent. As we explained in *State* v. *Lytell*, 206 Conn. 657, 539 A.2d 133 (1988), "[a] fundamental purpose of the criminal law is to protect individual citizens from the criminal conduct of another. People are neither fungible nor amorphous. Where crimes against persons are involved, a separate interest of society has been invaded for each violation. Therefore, when two or more persons are the victims of a single episode there are as many offenses as there are victims." (Internal quotation marks omitted.) Id., 666; see also *State* v. *Bunkley*, 202 Conn. 629, 659–60, 522 A.2d 795 (1987) (rejecting defendant's claim that conviction and consecutive punishment for manslaughter and assault "arising from one accident violated his constitutional protection against double jeopardy," reasoning that "there are as many offenses as there are victims" (internal quotation marks omitted)); *State* v. *Madera*, 198 Conn. 92, 109–10, 503 A.2d 136 (1985) (there was no double jeopardy violation when defendant was convicted and punished for fourteen counts of arson murder arising out of single fire); *State* v. *Couture*, 194 Conn. 530, 565-66, 482 A.2d 300 (1984) (concluding that "[t]here are no double jeopardy obstacles" to convicting and punishing defendant for multiple violations of felony murder statute on basis of multiple victims), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

The defendant's double jeopardy claim relates to his conviction of *two* assaults as to *each* victim. He argues that the constitutional prohibition was violated when he was convicted and punished for assaulting each individual victim twice because the "charges arose from a continuous course of conduct that occurred in a very short time span . . . ." The state disagrees, arguing that the defendant committed at least two separate and distinct completed assaults with respect to each victim, and, therefore, his multiple convictions do not violate the double jeopardy clause.

We previously have not analyzed the unit of prosecution under § 53a-59 (a) (1), but the Appellate Court has addressed the issue with respect to the crime of assault in the second degree in violation of General Statutes § 53a-60 (a) (2),[10] and we find its approach instructive as a starting point. In *State* v. *Nixon*, 92 Conn. App. 586, 886 A.2d 475 (2005), the Appellate Court concluded that a continuous course of conduct involving multiple stabbings of a single victim forms a single unit of prosecution under § 53a-60 (a) (2). Id., 589, 597. The court explained that the language of the second degree assault statute was ambiguous with respect to the intended unit of prosecution because the statute did not specify whether the legislature intended to punish every injury inflicted as a separate crime. See id., 594 ("although the statute does not say 'with intent to cause injuries,' it also does not say 'with intent to cause *an* injury' " (emphasis in original)). The court rejected the state's argument that every stab wound inflicted by a defendant always constitutes a separate assault, reasoning that, "[t]o say, for example, that our legislature intended that a defendant charged with simple assault, where ten blows were thrown, could be tried and found not guilty at one trial relating only to the first punch thrown and then, following the state's argument, subsequently charged and brought to trial nine more times, all on the basis of one fight with one victim in one place in one very short period of time, simply does not comport with our reading of the statute, nor does it comport with the history of the prosecution of similar offenses in our case law." Id., 594–95.

Like § 53a-60 (a) (2), neither the language nor the legislative history of § 53a-59 (a) (1) indicates the unit of prosecution intended by the legislature. As previously explained, § 53a-59 (a) (1) provides: "A person is guilty of assault in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ." General Statutes § 53a-3 (4) defines " '[s]erious physical injury' " as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ

. . . ." General Statutes § 53a-3 (3), in turn, defines " '[p]hysical injury' " as "impairment of physical condition or pain . . . ." Notably, the legislature has conspicuously declined to use either the singular, such as "*a* physical injury" or "*an* impairment of physical condition," or the plural, such as "physical injuries" or "impairments of physical condition." See *State* v. *Nixon*, supra, 92 Conn. App. 594. "[I]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Citation omitted.) *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 219, 38 A.3d 1183, cert. denied, 568 U.S. 940, 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012). In the absence of such limiting language in § 53a-59 (a) (1), we cannot conclude that the statute unambiguously defines the unit of prosecution for assault in the first degree.

The legislative history of § 53a-59 does not resolve the ambiguity in the text of the statute. The limited legislative history of § 53a-59 reflects that the purpose of the assault statute was to grade the seriousness of the offense on the basis of the intent of the actor, the means used to commit the assault, and the seriousness of the injuries inflicted.[11] Nothing in the legislative history addresses the legislature's intended unit of prosecution.[12]

In the absence of a clear legislative intent to impose multiple punishments for violations of the same criminal statute arising out of a single transaction or occurrence, the unit of prosecution question must be resolved in favor of the rule of lenity. In *Bell* v. *United States*, 349 U.S. 81, 75 S. Ct. 620, 99 L. Ed. 905 (1955), the United States Supreme Court explained: "When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution . . . . When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. . . . [I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes." Id., 83–84; see also *Simpson* v. *United States*, 435 U.S. 6, 14–16, 98 S. Ct. 909, 55 L. Ed. 2d 70 (1978) (relying in part on rule of lenity to conclude that Congress did not intend to subject defendant to multiple punishment for single criminal transaction); *Ladner* v. *United States*, 358 U.S. 169, 177, 79 S. Ct. 209, 3 L. Ed. 2d 199 (1958) (when federal assault statute was susceptible of multiple reasonable interpretations, "the [c]ourt applies a policy of lenity and adopts the less harsh meaning"); *United States* v. *Chipps*, 410 F.3d 438, 449 (8th Cir. 2005) ("We conclude that Congress has not specified the unit of prosecution for simple assault with clarity,

and so we apply the rule of lenity and resolve the doubt in favor of [the defendant]. Applying the rule of lenity here means interpreting assault to be a [course of conduct] offense, as that limits his sentencing exposure.").

Following *Bell*, we have applied the rule of lenity to avoid turning a single transaction into multiple offenses when the governing statutes and legislative history are ambiguous. See, e.g., *State* v. *Ruscoe*, 212 Conn. 223, 257–58, 563 A.2d 267 (1989) ("because [General Statutes] § 53-132 is ambiguous in respect to whether separate punishments were intended for the possession of more than one item with defective identification marks, the rule of lenity dictates that the issue be resolved in the defendant's favor, and that two of the defendant's convictions under § 53-132 must be vacated"), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990); *State* v. *Rawls*, 198 Conn. 111, 122, 502 A.2d 374 (1985) ("[u]nless a clear intention to fix separate penalties for each narcotic substance involved is expressed, the issue should be resolved in favor of lenity and against turning a single transaction into multiple offenses").

The courts of our sister states also consistently have applied the rule of lenity in cases involving ambiguous statutes to determine the applicable unit of prosecution under the double jeopardy clause. See, e.g., *Mill* v. *State*, 585 P.2d 546, 552 n.4 (Alaska 1978) ("[i]n marginal cases doubts should be resolved against turning a single transaction into multiple offenses"), cert. denied, 444 U.S. 827, 100 S. Ct. 51, 62 L. Ed. 2d 34 (1979); *Walker* v. *State*, 53 Md. App. 171, 201, 452 A.2d 1234 (1982) ("If the [l]egislature intended two crimes arising out of a single act to be punished separately, we defer to that legislated choice. . . . If the [l]egislature intended but a single punishment, we defer to that legislated choice. If we are uncertain as to what the [l]egislature intended, we turn to the so-called '[r]ule of [l]enity,' by which we give the defendant the benefit of the doubt." (Citations omitted.)); *People* v. *Wakeford*, 418 Mich. 95, 139, 341 N.W.2d 68 (1983) ("a clear legislative intent is required to overcome what is in effect the rebuttable presumption against multiple punishment contained in the [d]ouble [j]eopardy [c]lause, which works as a particularized version of the rule of lenity" (emphasis omitted; internal quotation marks omitted)); *State* v. *Tvedt*, 153 Wn. 2d 705, 711, 107 P.3d 728 (2005) ("if the legislature fails to define the unit of prosecution or its intent is unclear, under the rule of lenity any ambiguity must be resolved against turning a single transaction into multiple offenses" (internal quotation marks omitted)).

Our analysis does not end there, of course, because not every criminal activity inflicting repetitive harm directed against a single victim on the same occasion involves a continuous course of conduct. It depends on the facts. To determine when one course of conduct

ends (or is "completed") and another begins for double jeopardy purposes, our case law looks to whether the defendant's acts took place at different times or locations, whether the defendant was motivated by different criminal intents, and whether the acts were interrupted by intervening events or circumstances. See, e.g., *State v. Brown*, supra, 299 Conn. 653 ("[t]he attempted robbery became a complete transaction when the attempt failed and the victim escaped"); *State v. Licari*, supra, 132 Conn. 226 (defendant did not commit two distinct offenses of operating automobile under influence of liquor because "nothing occurred . . . to interrupt the offense from the time he started in New Haven until he stopped his car in Woodbridge"); *State v. Ayala*, 154 Conn. App. 631, 655, 106 A.3d 941 (2015) ("the charges of interference were based on two separate, distinct acts of alleged interference occurring at separate places, and separated by the transporting of the defendant from one location to another"), aff'd, 324 Conn. 571, 153 A.3d 588 (2017); *State v. Nixon*, supra, 92 Conn. App. 591 ("the defendant twice stabbed the same victim, at the same place and during the same time period, with the same instrument, with the same common intent to inflict physical injury during one continuous, uninterrupted assault").

The courts of other jurisdictions rely on similar factors. Other courts commonly consider, as we do, the length of time between acts,[13] the locations of the acts or victims,[14] evidence of separately formed criminal intents,[15] or some combination thereof.[16] The Supreme Courts of Washington and New Mexico have reviewed and summarized the factors used across jurisdictions to determine when a defendant's acts are sufficiently distinct to constitute multiple offenses. In *State v. Villanueva-Gonzalez*, 180 Wn. 2d 975, 329 P.3d 78 (2014), the Supreme Court of Washington explained, "[t]here is no bright-line rule for when multiple assaultive acts constitute one course of conduct. While any analysis of this issue is highly dependent on the facts, courts in other jurisdictions generally take the following factors into account: [1] [t]he length of time over which the assaultive acts took place, [2] [w]hether the assaultive acts took place in the same location, [3] [t]he defendant's intent or motivation for the different assaultive acts, [4] [w]hether the acts were uninterrupted or whether there were any intervening acts or events, and [5] [w]hether there was an opportunity for the defendant to reconsider his or her actions." Id., 985. The New Mexico Supreme Court applies a similar set of factors, drawn from its review of double jeopardy cases in other jurisdictions, in order to determine whether the defendant's acts were "separated by sufficient indicia of distinctness." (Internal quotation marks omitted.) *State v. DeGraff*, 139 N.M. 211, 223, 131 P.3d 61 (2006). "Such indicia include the timing, location, and sequencing of the acts, the existence of an intervening event, the

defendant's intent as evidenced by his conduct and utterances, and the number of victims." Id.

To summarize, because the relevant statute does not clearly authorize us to treat each separate act as a separate crime, we apply the rule of lenity to resolve any doubt against turning a single transaction into multiple offenses. We look to the following factors to determine whether, on this record, the defendant engaged in distinct courses of conduct and, therefore, separately punishable assaults as to each victim: (1) the amount of time separating the acts; (2) whether the acts occurred at different locations; (3) the defendant's intent or motivation behind the acts; and (4) whether any intervening events occurred between the acts, such that the defendant had the opportunity to reconsider his actions.

## II

We first address whether the defendant's conviction and punishment for two counts of assault in the first degree as to Tucker violate the double jeopardy clause. The record shows that there was a single, uninterrupted fight in which the defendant and Eliezer both stabbed Tucker in a discrete area of the parking lot. All of Tucker's stab wounds were inflicted within seconds of each other. There is no evidence of a break in the fight with Tucker or any other intervening event separating one stabbing from another, which would have provided the defendant an opportunity to reconsider his actions and to formulate the intent to commit an additional assault. See *State* v. *Nixon*, supra, 92 Conn. App. 591 ("the defendant twice stabbed the same victim, at the same place and during the same time period, with the same instrument, with the same common intent to inflict physical injury during one continuous, uninterrupted assault"). Without evidence to meaningfully distinguish the acts such that they are "susceptible of separation into parts, each of which in itself constitutes a completed offense"; (internal quotation marks omitted) *State* v. *Brown*, supra, 299 Conn. 652; we conclude that the defendant's assaultive acts against Tucker were part of the same continuing course of conduct. For that reason, the imposition of multiple punishments on the defendant for the assault on Tucker violates the double jeopardy clause of the fifth amendment to the United States constitution.

The state argues that the defendant committed two distinct and complete assaults against Tucker because he intentionally stabbed Tucker and, by doing so, also intentionally aided Eliezer in the stabbing of Tucker. This argument misses the point. Double jeopardy is triggered because, on the state's own theory, the defendant has been convicted twice of committing the same crime on the same victim for the same conduct. More particularly, the conduct that is alleged to have intentionally aided the defendant's coperpetrator in the commission of an assault is the very same conduct that

constitutes the defendant's commission of the crime of assault as a principal. The state's theory of the defendant's accessorial liability was that, by participating in the fight with a knife, either by actually stabbing each victim or simply through his armed presence, the defendant simultaneously aided Eliezer in committing the crime of assault. The actus rei underlying both of the defendant's assault convictions as to Tucker are one and the same. Because it is axiomatic that the double jeopardy clause prohibits the imposition of multiple punishments for the same offense; *State* v. *Brown*, supra, 299 Conn. 651; the defendant's two convictions of assault based on the same actus reus violate the double jeopardy clause.[17] We therefore reverse the judgment of the Appellate Court insofar as it affirmed the defendant's conviction of assault in the first degree as an accessory with respect to Tucker.

## III

We next consider whether the double jeopardy clause was violated when the defendant was convicted and punished for two counts of assault in the first degree as to Rodriguez. Rodriguez received five stab wounds. Two or three of those wounds occurred in rapid succession following Rodriguez' intervention in the fight between the defendant and Medina, and the defendant inflicted at least one of those initial wounds. The defendant and Eliezer then walked away from the fight to a different area of the parking lot near the sidewalk. Rodriguez and the defendant were in separate areas of the parking lot, and no blows were exchanged during the interlude. This break provided an opportunity for the defendant to reconsider his actions and to formulate a distinct criminal intent.

The fight resumed after Rodriguez approached the defendant and Eliezer a second time. Rodriguez said something to the men, then turned away. At that point, the defendant and Eliezer ran after Rodriguez, and Eliezer stabbed Rodriguez in the back, causing him to fall to the ground in a grassy area adjacent to the parking lot. Rodriguez was lying on his back unable to move after this second and distinct phase of the attack. As Rodriguez lay on the ground, the defendant then proceeded to stab Rodriguez in the chest while saying "that's for hitting my brother." This final stabbing was distinct in a number of ways from the first series of stabbings that occurred before the break in the fight. Geographically, although the locations were proximate, the defendant and his victim were in a grassy area outside the parking lot where the first stabbing took place. In addition, a sufficient amount of time had elapsed to give the defendant an opportunity to reconsider his actions during the break in the fighting. As suggested by the defendant's declaration that the final stab was "for hitting [Eliezer]," the defendant had formulated a new criminal intent that was separate and

distinct from the intent behind the initial stabbings.

We acknowledge that the two criminal acts involving Rodriguez plainly arose out of the same general altercation, and the separation between the two events, in both time and place, is not great. The entire fight, from the time that Tucker and Rodriguez intervened to the defendant's final stabbing of Rodriguez, lasted approximately seventy seconds. In many instances, multiple stabbings occurring within a similarly brief time period may not be sufficiently distinct to constitute separate and completed assaults. See, e.g., *United States* v. *Chipps*, supra, 410 F.3d 447 ("no more than a few seconds elapsed between [the] two instances of assaultive conduct"); *State* v. *Nixon*, supra, 92 Conn. App. 591 (rapid stabbings); *State* v. *Harris*, 243 S.W.3d 508, 510 (Mo. App. 2008) (when attack with knife "lasted about one minute," defendant committed one assault, not three). In this case, however, the distinct break in the fighting, the clear opportunity provided by that intervening period of time and physical separation for the defendant to reconsider his actions, and the evidence establishing a separate and distinct criminal intent behind the final stabbing make these acts sufficiently distinct to constitute two separate courses of assaultive conduct.

The defendant argues that *State* v. *Nixon*, supra, 92 Conn. App. 586, controls the outcome of the present case because, under the factors considered by the court in *Nixon*, the defendant's multiple stabbings of Rodriguez are part of the same act or transaction. We disagree. In *Nixon*, the defendant stabbed the victim twice in rapid succession without any intervening events or break in the attack. See id., 591. In contrast, the defendant's stabbings of Rodriguez are distinguished by the break in the fighting, the movement from one area of the parking lot to another, and the defendant's own articulation of a distinct criminal intent. On these facts, we conclude that the defendant's separate stabbings of Rodriguez constituted two distinct courses of conduct for double jeopardy purposes.

We are similarly unconvinced by the defendant's argument that his conviction as a principal categorically precludes his conviction as an accessory for the same crime. It is true that "[t]here is no such crime as *being an accessory* . . . . The accessory statute merely provides alternate means by which a substantive crime may be committed." (Emphasis in original; internal quotation marks omitted.) *State* v. *Montanez*, supra, 277 Conn. 755–56. But this does not mean that a defendant can never be convicted of the same substantive crime as both a principal and an accessory. Multiple convictions of the same offense are permissible under the double jeopardy clause, as long as each conviction is based on distinct acts or transactions that constitute separately completed units of prosecution under the

statute in question. See *State* v. *Brown*, supra, 299 Conn. 652 ("distinct repetitions of a prohibited act, however closely they may follow each other . . . may be punished as separate crimes without offending the double jeopardy clause" (internal quotation marks omitted)). We conclude that the defendant's stabbings of Rodriguez constituted two distinct courses of conduct under § 53a-59 (a) (1).

The defendant has failed to establish that his two convictions of assault in the first degree with respect to Rodriguez violate the double jeopardy clause. We therefore affirm the judgment of the Appellate Court insofar as it affirmed the defendant's assault convictions as to Rodriguez.[18]

The judgment of the Appellate Court is reversed insofar as it affirmed the defendant's conviction of first degree assault as an accessory as to Kenneth Tucker; the case is remanded to the Appellate Court with direction to reverse the trial court's judgment only as to that conviction and to remand the case to the trial court with direction to vacate the defendant's conviction of first degree assault as an accessory as to Tucker; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** July 9, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[3] Specifically, with respect to the offenses committed against Rodriguez, the court sentenced the defendant to sixteen years incarceration on count one (attempt to commit murder); sixteen years on count two (assault in the first degree as a principal), concurrent to count one; sixteen years on count three (assault in the first degree as an accessory), concurrent to counts one and two; and sixteen years on count four (conspiracy to commit assault in the first degree), concurrent to counts one through three. With respect to the offenses committed against Tucker, the court sentenced the defendant to six years incarceration followed by five years of special parole on count six (assault in the first degree as a principal), consecutive to counts one through four, and to six years incarceration followed by five years of special parole on count seven (assault in the first degree as an accessory), consecutive to counts one through four but concurrent to count six.

[4] It is undisputed that the defendant's unpreserved constitutional claim is reviewable under *Golding*.

[5] The defendant has not invoked the protections of our state constitution.

[6] *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[7] "Our case law has long established that each act of criminal sexual conduct, as defined by our criminal statutes, is separately punishable under those statutes and, therefore, in such cases there is no double jeopardy violation because they do not arise out of the same act or transaction." *State* v. *Scott*, 270 Conn. 92, 99, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005); see, e.g., *State* v. *Kulmac*,

230 Conn. 43, 68–69, 644 A.2d 887 (1994) (separate acts of vaginal penetration by finger and penis); *State* v. *Snook*, 210 Conn. 244, 260–62, 555 A.2d 390 (multiple acts of risk of injury to child), cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Frazier*, 185 Conn. 211, 228–30, 440 A.2d 916 (1981) (multiple forcible sexual assaults during course of burglary), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982); ; see also *State* v. *Albert*, 252 Conn. 795, 805, 750 A.2d 1037 (2000) (sexual assault statutes designed to punish fact, not degree, of penetration).

[8] An exception to this approach is found in *State* v. *Johns*, 184 Conn. 369, 439 A.2d 1049 (1981), in which we applied the *Blockburger* test to the elements of the accessory statute to determine whether the imposition of multiple punishments for the crimes of burglary in the third degree as an accessory and conspiracy to commit burglary violated the double jeopardy clause. See id., 375–80. We did so, however, only because the defendant had argued that the intent elements of conspiracy and accessory liability were the same. See id., 374. Moreover, we noted that our rejection of the defendant's claim would have been the same had we applied *Blockburger* to the substantive burglary statute. Id., 378–79. *Johns* has no bearing on the present case.

[9] Because there is no such crime as being an accessory, § 53a-8 contains no punishment provision of its own. Instead, a defendant convicted as an accessory is punished "as if he were the principal offender"; General Statutes § 53a-8 (a); according to the punishment provision of the principal offense. See *State* v. *Flemke*, 315 Conn. 500, 509, 108 A.3d 1073 (2015) ("§ 53a-8 . . . provides that an accomplice is subject to exactly the same liability *and punishment* as the principal" (emphasis in original)).

[10] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, the actor causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

[11] See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1969 Sess., pp. 6–7, remarks of David M. Borden, executive director of the Commission to Revise the Criminal Statutes ("[T]he assault crimes are divided into three degrees and they take into account not only the means used in the assault but the effect on the victim. Under present law there is a gap between breach of peace by assault and aggravated assault, whereas if a dangerous weapon is not used, there could be a very serious effect on the victim but the prosecution is limited there to a breach of peace by assault charge which is a misdemeanor even though it may be a very vicious assault even though no dangerous weapon is used. This gap is filled."); Commission to Revise the Criminal Statutes, Penal Code Comments (1971) p. 23, reprinted in Conn. Gen. Stat. Ann., tit. 53a, ch. 952, p. 323 (West 2012), commission comment ("The prior law of assault was contained essentially in [General Statutes §§] 53-12 (assault with intent to murder), 53-16 (aggravated assault) and 53-174 (breach of peace by assault). These statutes draw distinctions based only on the intent of the actor or the weapon used, without regard to the degree of injury inflicted. Thus there was a wide gap between breach of peace by assault and aggravated assault, resulting in the fact that if the actor intentionally inflicted serious injury on his victim, but did not use a deadly weapon or dangerous instrument, the most he could be charged with was breach of peace by assault, a misdemeanor. [General Statutes §§ 53a-59 through 53a-64], which are based primarily on the New York Revised Penal Law, grade the seriousness of the offense by reference to the intent of the actor, the means used, the injury inflicted and the seriousness of the other risks created. Assault is divided into three degrees.").

[12] It is not surprising that we are unable to discern a clear expression of the unit of prosecution from the text of the statute or the legislative history. As Chief Justice Earl Warren explained: "The problem of multiple punishment is a vexing and recurring one. . . . [M]urdering two people simultaneously might well warrant two punishments but stealing two [one dollar] bills might not. . . . In every instance the problem is to ascertain what the legislature intended. Often the inquiry produces few if any enlightening results. Normally these are not problems that receive explicit legislative consideration." *Gore* v. *United States*, 357 U.S. 386, 393–94, 78 S. Ct. 1280, 2 L. Ed. 2d 1405 (1958) (Warren, C. J., dissenting).

[13] See, e.g., *Cronce* v. *State*, 216 P.3d 568, 570 (Alaska App. 2009) ("[w]e have previously approved separate convictions for assaults [when] there were clear breaks in time and circumstances between the offenses"); *Spencer* v. *State*, 868 A.2d 821, 824 (Del. 2005) (temporal separation between acts

was sufficient to support finding that defendant committed separate acts); *Simmons* v. *State*, 568 So. 2d 1192, 1201 (Miss. 1990) ("[t]here was a sufficient gap in time between the assaults to constitute separate offenses"); *Weatherly* v. *State*, 733 P.2d 1331, 1338 (Okla. Crim. App. 1987) ("[a] significant gap exists between the first and second attack so that the criminal transaction may not be called uninterrupted or unintermittent").

[14] See, e.g., *Spencer* v. *State*, 868 A.2d 821, 824 (Del. 2005) (spatial separation between acts was sufficient to support finding that defendant committed separate acts); *Simmons* v. *State*, 568 So. 2d 1192, 1201 (Miss. 1990) ("The stabbing and biting took place while [the defendant and the victim] were parked on the interstate. The shearing took place after they returned to [the city] to get the scissors."); *State* v. *Fischer*, 165 N.H. 706, 715, 82 A.3d 891 (2013) ("[h]ere, the defendant was charged with two separate incidents of assault—the first took place in the living room and, sometime thereafter, the second occurred in the kitchen").

[15] See, e.g., *State* v. *Haney*, 842 A.2d 1083, 1085 (R.I. 2004) ("Although [the] defendant committed both crimes on the same evening, approximately fifteen minutes elapsed between [the assaults]. This [fifteen minute] interval provided [the] defendant with sufficient opportunity to reflect on his assaultive conduct and to forbear from committing another crime.").

[16] See, e.g., *United States* v. *Hamell*, 3 F.3d 1187, 1191 (8th Cir. 1993) (two assaults were "separate and distinct criminal episodes" when they "happened at different times and places and had different motivations"), cert. denied, 510 U.S. 1138, 114 S. Ct. 1121, 127 L. Ed. 2d 430 (1994), and cert. denied sub nom. *Amerson* v. *United States*, 510 U.S. 1139, 114 S. Ct. 1123, 127 L. Ed. 2d 432 (1994); *State* v. *Rambert*, 341 N.C. 173, 176–77, 459 S.E.2d 510 (1995) ("[The] defendant's actions were three distinct and, therefore, separate events. Each shot, fired from a pistol, as opposed to a machine gun or other automatic weapon, required that [the] defendant employ his thought processes each time he fired the weapon. Each act was distinct in time, and each bullet hit the vehicle in a different place.").

[17] Our resolution of the issue might be different if the defendant had stabbed Tucker and then engaged in some other conduct—holding Tucker down, for example—to aid his brother's assault on Tucker. There is no evidence of any such separate conduct in this case.

[18] The defendant also argues that his multiple assault convictions for each victim are unconstitutional because the state has changed its theory of the case on appeal. He contends that, at trial, the state pursued the principal and accessory counts as alternative theories of culpability as to each victim, but, on appeal, the state argues that the principal and accessory counts were independent of each other and stemmed from separate criminal acts. Although this "theory of the case" argument is included as part of the defendant's double jeopardy claim, it is grounded in the due process doctrine, as the case law relied on by the defendant demonstrates. See, e.g., *State* v. *Carter*, 317 Conn. 845, 854, 120 A.3d 1229 (2015) ("[t]he theory of the case doctrine is rooted in principles of due process of law" (internal quotation marks omitted)); *State* v. *Fourtin*, 307 Conn. 186, 208, 52 A.3d 674 (2012) ("[I]t is well established that [o]ur rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path [the party] rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.)) To the extent that the defendant raises a due process claim for the first time before this court, we decline to review it. See, e.g., *State* v. *Fauci*, 282 Conn. 23, 26 n.1, 917 A.2d 978 (2007) ("[w]e ordinarily decline to consider claims that are not raised properly before the Appellate Court or in the petition for certification to appeal to this court"). To the extent that the defendant seeks to argue the point in support of his double jeopardy claim, the state's theory of the case has no impact on the "unit of prosecution" analysis as applied to resolve the present case.